GUTIERREZ MARCA LLP
WILLIAM F. GUTIERREZ, SBN 148668
MATTHEW D. MARCA, SBN 180686
465 California Street, 5th Floor
San Francisco, California 94104
Telephone: 415.231.6160
Facsimile: 415.231.6164
Email: wgutierrez@gutierrez-marca.com
Email: mmarca@gutierrez-marca.com

Craig M. Peters, SBN: 184018
ALTAIR LAW LLP
465 California St. 5th Floor
San Francisco, CA 94104
Telephone: (415) 988-9828
Facsimile: (415) 988-9888
E-mail: cpeters@altairlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.H., a minor through his Guardian ad Litem, KATHRYN YOLKEN,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN MATEO; DOGAN, AYSE; BERKOVATZ, JULIE; DAWSON, TAMIKA; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 3:20-CV-00961-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF MINOR'S CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing**<br>Date: September 3, 2026<br>Time: 2:00 P.M.<br>Dept: Courtroom 4 – 17th Floor<br>Videoconference Only<br><br>THE HONORABLE VINCE CHHABRIA |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on September 3, 2025 at 2:00 p.m. as set by the Court, Plaintiff J.H., a minor, by and through his Guardian ad Litem, Kathryn Yolken, will and hereby does move this Court for an order approving the compromise of J.H.'s claims against Defendants County of San Mateo, Ayse Dogan and Julie Berkovatz only.

Specifically, Plaintiff moves for an order:

1. Approving the compromise of the disputed claims of J.H., a minor, in the total gross sum of [redacted];

2. Directing that the gross proceeds of [redacted] be paid to the [redacted] Qualified Settlement Fund;

3. Authorizing and directing payment from the settlement proceeds of attorneys' fees in the total sum of $[redacted], to be divided between Gutierrez Marca LLP and Altair Law P.C. in accordance with the written fee-division agreement described in Part V.B below, and reimbursement of litigation costs and expenses in the total sum of [redacted], pursuant to California Probate Code § 3601(a), to be paid from the [redacted] Qualified Settlement Fund; and

4. Granting such other relief as the Court deems just and proper.

This motion is made pursuant to Federal Rule of Civil Procedure 17(c) and the Court's independent duty to safeguard the interests of minor litigants, and pursuant to California Code of Civil Procedure § 372 and California Probate Code §§ 3600, 3601, 3604, and 3611. It is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; the concurrently filed Declaration of Matthew Marca and the exhibits thereto; the concurrently filed Declaration of Kathryn Yolken, Guardian ad Litem; the Declaration of attorney Mercy Hall regarding the Qualified Settlement Fund; the Declaration of Nicholas Coccimiglio regarding the potential benefits from the net recovery to J.H., the Declaration of Plaintiff's mother [redacted], the [Proposed] Order submitted herewith; all records and papers on file; and such further evidence as may be presented at or before the hearing.

DATED: August 19, 2026

_/s/ Matthew D. Marca_
Attorney for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS


I. INTRODUCTION .......... 4

II. STATEMENT OF FACTS .......... 4

III. THE COURSE OF THE LITIGATION AND THE WORK PERFORMED BY PLAINTIFF'S COUNSEL .......... 5

- A. Six years of litigation, sustained through a parallel criminal prosecution. .......... 6
- B. Two rounds of dispositive pleading challenges. .......... 6
- C. Defending against Rule 11 sanctions. .......... 6
- D. Plaintiff defeated in whole or in party every case-dispositive motion .......... 6
- E. Expert development and a fully worked-up damages case. .......... 7
- F. Extensive motion-in-limine practice and complete trial preparation. .......... 9
- G. A settlement achieved at the Mandatory Settlement Conference. .......... 9

IV. LEGAL STANDARD .......... 9

V. ARGUMENT .......... 10

- A. The net recovery to J.H. is fair and reasonable under Robidoux. .......... 10
- B. The requested attorneys' fees and costs are reasonable. .......... 13
- C. The net proceeds should be paid to a Qualified Settlement Fund. .......... 15

VI. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Cases**

*Robidoux v. Rosengren*, 638 F.3d 1177 (9th Cir. 2011) ........ 9, 10, 13

*Salmeron v. United States*, 724 F.2d 1357 (9th Cir. 1983) ........ 9

**Statutes**

Cal. Civ. Proc. Code § 372 ........ 9

Cal. Prob. Code § 3601 ........ 1, 10, 13

Cal. Rule of Court 7.955 ........ 13, 15

Government Code § 815.6 ........ 6, 13

Government Coder § 820.2 ........ 5, 6, 11, 13

Internal Revenue Code § 468B ........ 15

## I. INTRODUCTION

J.H. entered the County of San Mateo's foster-care system before he was eighteen months old, after being removed from his biological parents for his own protection. The County screened and approved Tamika Dawson as a resource parent through its Resource Family Approval process and placed J.H. in her home. The consequences of that erroneous approval were devastating. Tamika Dawson physically abused Toddler JH, causing him to suffer [redacted] requiring emergency neurosurgery. Today, JH lives with lifelong impairments, including [redacted]. He is now 9 years old and requires and will require [redacted] medical care, [redacted] treating physicians believe he will likely never be able to [redacted]

After more than six years of hard-fought litigation — through two rounds of dispositive pleading challenges, a Rule 11 sanctions motion, a motion for judgment on the pleadings, a co-defendant's motion to dismiss, a motion for summary judgment, a motion to bifurcate, and full trial preparation — the parties reached a settlement of [redacted] at a day-long settlement conference before Magistrate Judge Westmore, three weeks before a jury trial that was set to begin on August 3, 2026. Plaintiff now asks the Court to approve that compromise, to approve the requested fees and costs, and to direct the net proceeds into a first-party special needs trust that will preserve J.H.'s eligibility for the needs-based public benefits on which his lifetime care depends.

## II. STATEMENT OF FACTS

J.H. was removed from his biological parents and detained into the County of San Mateo's foster-care system before he was eighteen months old, for his own protection. The County screened and approved Tamika Dawson as a resource parent through its Resource Family Approval ("RFA") process. Among other causes of action, Plaintiff alleged that this approval was in violation of California's mandated standards and that had the State mandated standards been followed, Dawson would not have been approved. Plaintiff alleged that Plaintiff was wrongfully placed with Dawson and that placement with this unqualified resource parent caused Plaintiff's damages.

On January 5, 2019, while in Dawson's care, J.H. — then a pre-verbal toddler — sustained a

[redacted] He required emergency neurosurgery. Dawson was thereafter criminally prosecuted and convicted in state court for the conduct that caused the injury, a conviction that formed the basis of Plaintiff's collateral-estoppel motion in limine (Dkt. 175). Marca Decl. ¶¶ 4-5.

The harm is permanent. J.H., now nine years old, lives with [redacted]. He requires — and will require for the rest of his life [redacted] and his treating physicians do not expect that [redacted] Plaintiff's retained life care planner, Dawn Cook, R.N., C.N.L.C.P., and retained economist, Justin Regus, quantified the present value of J.H.'s future care and lost earning capacity at [redacted]. Marca Decl. ¶ 6. Because economic damages are joint and several under Civil Code §§ 1431.1 and 1431.2, the County would have been answerable for that entire figure irrespective of how a jury apportioned fault between the County and Dawson.

The County defended the Action claiming that even if Dawson did not qualify as a resource parent, the County did not cause J.H. damages, the damage suffered by J.H. did not cause Plaintiff's ADHD and that J.H.'s ADHD not as serious as portrayed by his treating doctors. The County also contested the nature and extent of future services and future wage loss. Moreover, the County asserted that they were immune under Government Code § 820.2. Marca Decl. ¶ 5.

In November 2020, J.H. was adopted and his name was changed to [redacted]. Declaration of [redacted] ("Johnson Decl.") ¶ 2.

## III. THE COURSE OF THE LITIGATION AND THE WORK PERFORMED BY PLAINTIFF'S COUNSEL

This settlement was not the product of an early demand. It was earned over more than six years of contested litigation against a public entity that denied liability at every stage and asserted a discretionary-immunity defense capable of ending the case as a matter of law. The docket reflects sustained, high-stakes motion practice — nearly all of it initiated by the defense — that Plaintiff's counsel met and, on every case-dispositive question, defeated. The following account is drawn from the Court's own docket and is offered to inform the Court's assessment of both the reasonableness of the compromise and the reasonableness of the requested fee.

**A. Six years of litigation, sustained through a parallel criminal prosecution.**

Plaintiff filed suit on February 7, 2020 (Dkt. 1). Because the resource parent, Tamika Dawson, faced a parallel state criminal prosecution arising from the same conduct, discovery as to her was repeatedly stayed and the trial date was continued numerous times over a period of years (see, e.g., Dkt. 57, 92, 123, 133, 165, 186). Plaintiff's counsel was required to keep the civil case moving forward against the County and the individual County defendants throughout — litigating around Fifth Amendment constraints, updating the Court through successive case-management statements, and preserving the evidentiary record — while the criminal matter ran its course. Matthew Marca associated as counsel on August 1, 2023 (Dkt. 105) and served as lead trial counsel through settlement.

**B. Two rounds of dispositive pleading challenges.**

The County moved to dismiss and strike the First Amended Complaint (Dkt. 18); the Court granted that motion in part with leave to amend (Dkt. 33). Plaintiff repleaded, and the County again moved to dismiss the Second Amended Complaint (Dkt. 42); the Court again granted in part and denied in part (Dkt. 48), leaving Plaintiff's core claims intact. Each round required substantive briefing on the viability of a mandatory-duty theory under Government Code section 815.6 against the County's assertion of discretionary immunity under section 820.2 — the central legal battleground of the case.

**C. Defending against Rule 11 sanctions.**

In January 2022, the County defendants moved for Rule 11 sanctions (Dkt. 70). Plaintiff's counsel opposed the motion (Dkt. 78), and the Court granted it only in part and denied it in part (Dkt. 90). Defending the integrity of Plaintiff's pleadings against a sanctions motion added a further layer of contested motion work that counsel absorbed without compensation and at professional risk.

**D. Plaintiff defeated in whole or in party every case-dispositive motion.**

The defense pressed four separate attempts to defeat or fracture the case before it could reach a jury. Plaintiff's counsel defeated each one on the questions that mattered:

1. Judgment on the Pleadings. The County moved for judgment on the pleadings (Dkt. 149). The Court **denied** the motion (Dkt. 160).

2. Co-Defendant's Motion to Dismiss. Defendant Dawson moved to dismiss (Dkt. 154). The Court **denied** that motion as well (Dkt. 166).

3. Summary Judgment. The County moved for summary judgment on the entire case (Dkt. 168). After full briefing and argument, the Court **preserved the negligence claim against the County for trial**, granting the motion only in part and denying it as to the claim that proceeded (Dkt. 188) — the single most consequential ruling in the case, and the one that carried the greatest risk given the immunity defense.

4. Bifurcation. On the eve of trial the County moved to bifurcate liability and damages (Dkt. 190). The Court **denied** the motion (Dkt. 207; Dkt. 210), keeping Plaintiff's unified damages presentation intact for the jury.

**E. Expert development and a fully worked-up damages case.**

Plaintiff's counsel retained and developed the expert proof necessary to try a catastrophic pediatric brain-injury case — including a life-care planner and causation and medical experts — and coordinated treating-physician testimony spanning years of J.H.'s care (see Dkt. 196–197, 231–232). Counsel also litigated the admissibility and scope of expert testimony, including a motion to exclude the report and testimony of the County's causation expert, Dr. Robin E. Smith (Dkt. 192), and motions defining the permissible scope of treating-physician testimony. Counsel also took and defended the percipient, treating-physician, and retained expert depositions on which the trial presentation depended. The depositions taken and defended in this action are as follows:

| Deponent | Role | Date | Taken / Defended |
|---|---|---|---|
| Ayse Dogan | County of San Mateo social work supervisor; individual defendant | August 21, 2025 | Taken |
| Julie Berkovatz-Isidro | County of San Mateo social worker; individual defendant | September 17, 2025 | Taken |
| Tamika Dawson (Session 1) | Co-defendant | September 25, 2025 | Taken |
| Tamika Dawson | Co-defendant | October 8, 2025 | Taken |

| Deponent | Role | Date | Taken / Defended |
|---|---|---|---|
| (Session 2) | | | |
| Marbren Vasquez | County of San Mateo PMK | October 1, 2025 | Taken |
| Cicely Ferlatte | County of San Mateo PMK | October 1, 2025 | Taken |
| Amy Yun | County of San Mateo PMK | October 2, 2025 | Taken |
| Treating physician — Dr. Koo | Non-retained treating experts Noticed by co-defendant Dawson | December 15, 2025 | Defended |
| Treating physician — Dr. Wall | Noticed by co-defendant Dawson | December 15, 2025 | Defended |
| Treating physician — Dr. Ni | Noticed by co-defendant Dawson | December 16, 2025 | Defended |
| Treating physician — Dr. Daldrup-Link | Noticed by co-defendant Dawson | December 17, 2025 | Defended |
| Treating physician — Dr. Tayama | Noticed by co-defendant Dawson | December 18, 2025 | Defended |
| Dawn Cook, R.N., C.N.L.C.P. | Plaintiff's retained life care planner | May 28, 2026 | Defended |
| Robin E. Smith, M.D. | County's retained pediatric neurologist (causation), NYU Langone | June 12, 2026 | Taken |
| Paula Rohde, M.A. | County's retained social-work standard-of-care expert | June 17, 2026 | Taken |
| Angel Rodriguez | Plaintiff's retained social-worker expert | June 15, 2026 | Defended |

Marca Decl. ¶¶ 7-11

**F. Extensive motion-in-limine practice and complete trial preparation.**

In the weeks before trial, Plaintiff's counsel filed five motions in limine (Dkt. 226–239) — including a collateral-estoppel motion grounded in Dawson's criminal conviction (Dkt. 175) and a motion to preclude a superseding-cause defense — and opposed the County's four motions in limine. Counsel prepared and filed the full complement of trial documents: the joint pretrial statement, statements of the case, witness and exhibit lists, proposed voir dire, jury instructions, and a proposed special verdict form (Dkt. 242–250), and appeared at a Final Pretrial Conference that ran nearly two hours (Dkt. 252). By the time the case settled, it was fully trial-ready, with a jury trial estimated at two to three weeks set to begin August 3, 2026. Marca Decl. ¶ 12.

**G. A settlement achieved at the Mandatory Settlement Conference.**

The case was referred to Magistrate Judge Westmore for settlement (Dkt. 208–209), and on July 15, 2026 the parties conducted a settlement conference that lasted nearly eight hours (Dkt. 257). The result was a [redacted] recovery for J.H., reached only after the case had survived every dispositive challenge and stood ready for trial. The Notice of Conditional Settlement was filed and the trial and pretrial dates were vacated pending this Court's approval of the minor's compromise (Dkt. 262–264). Marca Decl. ¶¶ 13-14.

## IV. LEGAL STANDARD

A federal court has an independent duty under Federal Rule of Civil Procedure 17(c) to protect the interests of a minor party, which includes the duty to evaluate and approve the settlement of a minor's claim. See *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983). Under *Robidoux*, the court evaluates whether the net recovery to the minor is fair and reasonable in light of the facts of the case, the minor's specific claim, and recoveries in comparable cases, and does so independent of the proportion of the total settlement allocated to attorneys' fees. *Robidoux*, 638 F.3d at 1181–82.

Disposition of the approved proceeds is governed by California law. A guardian ad litem may compromise a minor's claim only with court approval. Cal. Civ. Proc. Code § 372(a)(1). Upon approval, the court must order payment of reasonable expenses, costs, and attorneys' fees as it approves and

allows, Cal. Prob. Code § 3601 (a), and must direct disposition of the balance under section 3611 — including, after a hearing, payment to a special needs trust established under section 3604, id. § 3611(c). This Motion seeks Court approval to place the settlement proceeds into a Qualified Settlement Fund (QSF) while additional legal and financial planning are completed. While the funds are held in the QSF, no part of the proceeds owed to Plaintiff will be distributable without further Court order. Plaintiff, through his Guardian Ad Litem, will seek Court establishment of a special needs trust to hold Plaintiff's proceeds after this additional planning is completed. See Hall Decl. § I.B ¶¶ 5–8 regarding the QSF.

## V. ARGUMENT

### A. The net recovery to J.H. is fair and reasonable under Robidoux.

The compromise is fair and reasonable under each *Robidoux* consideration. The facts and J.H.'s specific claim are set out above and in the Marca Declaration: a pre-verbal child, removed by the County for his own protection and then placed by the County with a caregiver who injured him catastrophically, with damages supported by an unrebutted economic model and a joint-and-several liability structure. The net recovery to J.H. is [redacted] gross compromise, less [redacted] in attorneys' fees and [redacted] in litigation costs advanced by counsel over six years. No lien of the Department of Health Care Services has been asserted, and no other lien is presently asserted against the proceeds so far. As it stands now, J.H. will therefore retain approximately [redacted] of the gross settlement.

As to the third *Robidoux* consideration — recoveries in comparable cases — Plaintiff notes at the outset that direct comparators are scarce. Claims by a surviving child against a California county child-welfare agency for a catastrophic, non-fatal injury inflicted by a county-approved caregiver are uncommon, most resolve confidentially, and reported figures are almost always gross amounts that do not disclose the net sum received by the minor. With that caveat, the publicly reported recoveries against California child-welfare agencies most nearly analogous to this case are:

| Matter / Agency | Nature of Claim | Reported Gross Recovery |
|---|---|---|
| *J.G. v. County of Tulare* (Tulare Cnty. | Infant sustained profound, permanent brain damage from malnutrition; agency ignored | $32,000,000 |

| Matter / Agency | Nature of Claim | Reported Gross Recovery |
|---|---|---|
| Super. Ct.) | repeated abuse referrals; allegations of post-injury record alteration. Settled at mediation weeks before trial (July 2022; publicly announced Jan. 2023). | |
| *Turpin v. Riverside County / ChildNet Youth & Family Services* (Riverside County) | Six siblings physically and emotionally abused following a 2018 foster placement (Feb. 2026) — approximately $2,250,000 per claimant. | $13,500,000 |
| *Estate of Sophia Mason v. County of Alameda* | Wrongful death of an eight-year-old following repeated unheeded abuse referrals (approved Oct. 2025; publicly announced Aug. 2026). | $12,000,000 |
| *Kyle R. v. County of Santa Clara* (former foster youth) | Abuse of a foster youth by a county-affiliated pediatrician who later adopted him (Jan. 2026). | $5,500,000 |

Measured against that field, a [redacted] gross recovery for a single claimant is squarely within — and, on a per-claimant basis, at the upper end of — the reported range. It is more than double the approximately [redacted] per-claimant figure in the Turpin resolution and materially exceeds the Santa Clara recovery. The single outlier, the [redacted] Tulare County settlement, is distinguishable on the two dimensions that drove valuation here. That case was litigated in state court, where the county advanced no comparable Government Code § 820.2 discretionary-immunity defense to a placement-approval theory; and it carried aggravating proof — including allegations that the county altered records after the injury — that has no counterpart in this record. Plaintiff respectfully submits that this compromise compares favorably to the reported comparators once the immunity risk unique to this case is priced in.

The comparison is also favorable when measured against Plaintiff's own proof. The compromise represents approximately [redacted] of the unrebutted [redacted] economic-damages floor, before any allowance for non-economic damages — a ratio that reflects a reasoned discount for a government immunity defense rather than a discount for weakness on damages.

Critically, the reasonableness of this recovery cannot be assessed apart from the litigation risk that had to be overcome to obtain it. The County never conceded liability and asserted a discretionary-immunity defense that, had it prevailed at summary judgment or at trial, would have yielded J.H. nothing. The settlement was reached only after that defense had been tested and the core claim preserved for trial. A certain, substantial, and structured recovery of close to [redacted] for Plaintiff — protected in a special needs trust — is plainly fair and reasonable measured against the real possibility of a defense judgment. Petitioner's mother and the Guardian ad Litem are presently evaluating structured settlement options, and the Court will be presented with the proposed structure and its guaranteed and expected lifetime payout in connection with the subsequent petition to establish the special needs trust.

The reasonableness of the net recovery is confirmed by what those funds are projected to produce over J.H.'s lifetime. Nicholas J. Coccimiglio, a Certified Structured Settlement Consultant retained to provide preliminary settlement-planning assistance, reviewed the life care planning and economic materials and performed preliminary quoting using non-final annuity illustrations. Coccimiglio Decl. ¶¶ 1, 3, 6. He states that with an initial net investment of approximately $[redacted], the aggregate projected tax-free benefits payable to J.H. over his lifetime would exceed [redacted]. (*Id.* ¶ 6.) That aggregate figure exceeds the [redacted] present-value projection stated in the life care planning and economic materials. (*Id.*)

Mr. Coccimiglio is precise about what that comparison does and does not establish. The two figures measure different concepts — the life care and economic figure is a present-value estimate of anticipated needs and lost earning capacity, while the annuity figure is an aggregate projected lifetime-payment amount under non-final illustrations — and he expressly does not offer the comparison as a present-value equivalency. Coccimiglio Decl. ¶ 7. What it does confirm is that the preliminary structure is being developed with a substantial projected payment stream intended to provide resources beyond the present-value projection stated in the expert materials, while preserving the flexibility necessary to

finalize a plan responsive to J.H.'s needs. (*Id.*)

In his professional opinion, it is prudent to preserve the ability to use a special needs trust together with fixed and indexed tax-free structured-settlement annuities as the final settlement plan is completed, an approach intended to balance protected administration, reliable income, long-term purchasing-power considerations, and flexibility for J.H.'s changing needs over time. Coccimiglio Decl. ¶ 8; *see also id.* ¶ 5. No final plan has been selected or implemented, and the completed structure — with final carrier illustrations and trust documents — will be presented to the Court in connection with the subsequent petition to establish the special needs trust. *Id.* ¶¶ 4, 9.

**B. The requested attorneys' fees and costs are reasonable.**

Although *Robidoux* directs the Court to assess the net recovery independent of the fee, the fee itself remains subject to approval under Probate Code § 3601(a), and the factors that California courts apply to a minor's-compromise fee (see Cal. Rule of Court 7.955 (b)) confirm that the requested fee is reasonable here. Every factor points the same direction:

1. Time and labor; duration. The docket documents more than six years of contested litigation, including two rounds of pleading motions, a sanctions motion, four dispositive or case-shaping motions, extensive expert and in-limine practice, and complete trial preparation. See § III above.

2. Novelty and difficulty; skill required. The case turned on a difficult mandatory-duty theory under Government Code § 815.6 litigated against governmental discretionary immunity under Government Coder § 820.2 , in a catastrophic pediatric brain-injury posture and alongside a parallel criminal prosecution — questions demanding substantial skill to litigate to a favorable summary-judgment result.

3. Contingent risk. Counsel prosecuted the case entirely on contingency, advancing years of costs and expert fees with no assurance of any recovery, against a public entity with a genuine immunity defense. The risk of a complete loss was real and persisted through summary judgment and to the eve of trial.

4. Results obtained; experience and ability. Counsel defeated every case-dispositive motion in whole or part, preserved the claim for trial, prepared the case fully for a two-to-three-week jury trial, and secured a [redacted] recovery for a catastrophically injured minor. That result reflects the

experience and ability of counsel and fully supports the contracted contingency fee.

The requested fee of [redacted] is the fee provided for by the written Attorney-Client Retainer Agreement executed by Kathryn Yolken, Esq., as Guardian ad Litem for J.H., on July 27, 2023, a true and correct copy of which is attached to the Marca Declaration and Yolken Declaration as Exhibit A. That agreement assigns to counsel "a legal fee of ONE-THIRD (1/3) of any amounts recovered whether by compromise (settlement) or judgment," and provides that the fee "will increase to FORTY PERCENT (40%) of any amounts recovered … in the event that any of the following occur after a lawsuit is filed: (1) a dispositive motion is filed; (2) a writ or appeal is filed; or (3) the case has not resolved and reaches ninety (90) days before the first trial date." All three triggering conditions occurred. The County filed a motion for judgment on the pleadings (Dkt. 149) and a motion for summary judgment (Dkt. 168); co-defendant Dawson filed a motion to dismiss (Dkt. 154); and the case remained unresolved far beyond ninety days before any trial setting, ultimately settling nineteen days before the August 3, 2026 trial date. The requested fee is accordingly forty percent of the gross recovery, exactly as the agreement provides, with no premium, multiplier, or enhancement of any kind sought. The agreement also provides that no fee is owed if there is no recovery, and that advanced costs are reimbursed from the recovery.

**Costs.** Counsel advanced all litigation costs over the life of the case, subject to reimbursement only in the event of a recovery. The total costs advanced and incurred are [redacted], itemized in the Marca Declaration Exhibit B and summarized as follows:

| Firm | Entries | Period Covered | Amount |
|---|---|---|---|
| Altair Law P.C. | 28 | 07/06/2022 – 07/14/2026 | $[redacted] |
| Gutierrez Marca LLP | 13 | 12/01/2024 – 06/17/2026 | $[redacted] |
| Total costs advanced and incurred | | | $[redacted] |

These costs consist principally of court reporter and deposition transcript charges, retained expert and consultant fees (life care planning, economics, and social work standards), mediation fees, criminal trial transcripts obtained for use in the civil case, and messenger and delivery charges. Each was

reasonably and necessarily incurred in the prosecution of a catastrophic-injury case that was tried to the eve of a three-week jury trial. None represents general office overhead. Marca Decl. ¶ 16 Exh. B.

**Fee division among counsel.** California Rule of Court 7.955(c) and Rule of Professional Conduct 1.5.1 require that any division of the fee among counsel be disclosed to, and consented to in writing by, the client. Both requirements were satisfied at the outset of the representation. Contemporaneously with the retainer agreement, the Guardian ad Litem executed a written Attorney Fee Sharing Agreement, a true and correct copy of which is attached to the Marca Declaration as Exhibit A. That agreement expressly provides that "Client's legal fees under this agreement will not increase by reason of this association"; that associated counsel Matthew D. Marca "will receive 60% of the fees if the matter resolves prior to 60 days of the initial trial date," with Altair Law receiving the remaining 40%; and that Mr. Marca "will receive 50% of the fees if the case settles within 60 days before the initial trial date," with Altair Law receiving the remaining 50%. By signing, the Guardian ad Litem confirmed that she had read and understood the terms and consented to the association of counsel and the division of fees.

Because this case settled on July 15, 2026 — nineteen days before the August 3, 2026 trial date — the 50/50 division applies. Plaintiff therefore requests that the approved fee of [redacted] be paid [redacted] to Gutierrez Marca LLP and [redacted] to Altair Law P.C. The division reflects the work actually performed: Altair Law originated and carried the matter from 2020, and Gutierrez Marca LLP, which associated in on August 1, 2023 (Dkt. 105), served as lead trial counsel through summary judgment, expert discovery, motions in limine, trial preparation, and settlement. The division does not increase the fee charged to J.H. by a single dollar. Advanced costs are reimbursed to the firm that advanced them: [redacted] to Altair Law P.C. and [redacted] to Gutierrez Marca LLP.

**C. The net proceeds should be paid to a Qualified Settlement Fund.**

A qualified settlement fund is a creature of federal tax law. Congress authorized these funds in Internal Revenue Code § 468B, and the Treasury Department defined them by regulation in Treasury Regulations §§ 1.468B-1 *et seq.*, effective January 1, 1993. Hall Decl. § I.A ¶ 3. A fund, account, or trust qualifies if three requirements are satisfied: it is established pursuant to an order of, or approved by, a governmental authority and remains subject to that authority's continuing jurisdiction; it is established to

resolve one or more contested or uncontested claims arising out of a tort; and it is a trust under applicable state law, or its assets are otherwise segregated from those of the transferor. Treas. Reg. § 1.468B-1(c); Hall Decl. § I.A ¶ 3. The [redacted] QSF satisfies each element. It was established by, and remains subject to the continuing jurisdiction of, a governmental entity; placement of the settlement funds into it would resolve claims arising in tort; and the assets would be held in a segregated fund by an administrator independent of both Petitioner and Defendants. Hall Decl. § I.A ¶¶ 1, 4 & Ex. A.

The practical function of a QSF is to create breathing space after settlement. Proceeds held in a QSF are not actually or constructively received by the claimant, *see* Treas. Reg. § 1.451-2, which allows liens and subrogation claims to be verified and negotiated, a structured settlement annuity to be designed and underwritten, and related decisions to be made without the pressure of the litigation itself. Hall Decl. § I.B ¶ 5. Each of those tasks remains outstanding here, and each must be completed in sequence. The Medi-Cal lien must be approved and paid before any special needs trust can be funded; the trust must be designed, its trustee bonded, and the instrument presented to a court for approval; and the fixed and indexed annuities under evaluation can be purchased only if the funds have not been actually or constructively received by J.H. Hall Decl. § I.B ¶ 6; Coccimiglio Decl. ¶¶ 4–5. That last point is the controlling one: a direct distribution now would foreclose the structured settlement entirely and would jeopardize the very benefits eligibility this planning is designed to preserve. Hall Decl. ¶¶ 5–7.

Nor does the QSF prejudice any party or place the funds beyond this Court's reach. Upon payment into the fund, Defendants are released from present and future claims and the claims process ends as to them, with the fund administrator substituted as obligor through the doctrine of novation. Hall Decl. § I.C ¶¶ 9–10; *see* Restatement (Second) of Contracts § 280 (1981). And placement into the QSF is not a distribution. Apart from the attorneys' fees and costs approved in this Motion, no portion of J.H.'s recovery may be released from the QSF except as directed by a second and final order of this Court approving the disabled minor's compromise. Hall Decl. § I.B ¶¶ 7–8.

J.H. is a recipient of public benefits based on his status as an adopted out of foster care child and is currently receiving Medi-Cal for his medical care, in a category which currently is  not needs-based. However, Medi-Cal will become a needs-based benefit when J.H. turns 18 or 21 depending on developmental factors.

Given J.H.'s significant medical and disability-related needs, maintaining public benefits eligibility is paramount in ensuring the funds available to him from this settlement are maximized. Without public benefits, J.H.'s settlement would be rapidly depleted by his needs. Given this, Petitioner plans to bring a separate petition to establish the special needs trust to protect his benefits eligibility; however this requires some additional legal and financial planning.

In addition, Medi-Cal and/or California Children's Services have provided medical benefits to J.H. A lien has not been finalized and the amount must be determined and paid prior to funding any special needs trust. J.H. has two Medi-Cal numbers and names due to a name change and this has caused delay in determining the amounts of liens.

Last but not least, Petitioner and the adoptive mother are also evaluating the different investment options as part of a structured settlement investment to be paid into the special needs Trust. Because this additional legal and financial planning must be accomplished to properly plan for J.H. and finalize his settlement, Petitioner is proposing to place the funds into a Qualified Settlement Fund ("QSF"). The QSF operates as a temporary "parking place" for the funds without limiting all of the available planning tools Plaintiff is evaluating to maximize the available funds for J.H. See Declaration of Mercy Hall Section I.A.¶¶ 1-4, I.B. 5-8, Exhibit A.

Once the liens and legal and financial planning are completed, Petitioner will bring a petition to this Court to approve any lien amount, establish a special needs trust, approve a structured settlement to be paid into the special needs trust, and approve disbursement of the funds from the QSF. Any special needs trust established would be brought under ongoing supervision of the state probate Court in the County where the Trustee has its principal place of business.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the compromise of J.H.'s claims in the gross sum of [redacted] direct the funds to be placed into the Vaughn Johnson Qualified Settlement Fund ("QSF"), approve the requested attorneys' fees and costs, and direct that they be paid from the QSF — attorneys' fees of [redacted] divided $[redacted] to Gutierrez Marca LLP and $1,075,000.00 to Altair Law P.C., and reimbursement of litigation costs of [redacted] divided [redacted] to Altair Law P.C. and [redacted] to Gutierrez Marca LLP, leaving a total net recovery to

Plaintiff of [redacted]

DATED: August 19, 2026

_/s/ Matthew D. Marca_
Attorney for Plaintiff